CAMP v. BANK OF BENTONVILLE.

5-1808                                                     323 S. W. 2d 556

Opinion delivered April 20, 1959.

[Rehearing denied May 25, 1959]

*Claude Duty & Jeff Duty,* for appellant.

*Little & Enfield,* by *Clayton N. Little,* for appellee.

ED. F. McFADDIN, Associate Justice.   Jerry Lee Camp appeals from a decree of the Chancery Court which found that Camp, now of lawful age, had ratified a debt which he made while a minor. The question is whether Camp's acts under the circumstances here

shown, were sufficient to support the decree holding that there had been ratification.

On January 9, 1957, Camp executed his note[1] to A. V. Bright, doing business as "Bright's Used Cars", for $3,000.00, payable $125.00 per month until paid in full. The note was secured by a chattel mortgage covering: (a) one 1952 2-ton Chevrolet truck (b) one 1954 Plymouth sedan; (c) miscellaneous stock of automotive parts valued at $500.00; and (d) eleven cows and increase. Bright immediately and unconditionally transferred the note and mortgage to the appellee, Bank of Bentonville (hereinafter called "Bank"). The payments made to the Bank on the note were:

| Date | Amount | Nature of Payment |
|---|---|---|
| 2/25/57 | $ 50.00 | Cash |
| 3/20/57 | 100.00 | Cash |
| 4/20/57 | 800.00 | Proceeds of sale of Plymouth car. |
| 5/1/57 | 47.52 | Return of insurance premium cancelled when Plymouth car was sold. |
| 7/1/57 | 51.00 | Probably Cash |
| 11/8/57 | 102.00 | To be discussed later in this opinion |
| 12/9/57 | 100.00 | To be discussed later in this opinion |
| 12/13/57 | 56.00 | To be discussed later in this opinion |

When Camp defaulted, the Bank filed suit for judgment and foreclosure of the mortgage. Camp's defense was: that he was not 21 years of age until August 19, 1957; that the three payments credited on the note thereafter (i.e. November 8th, December 9th, and December 13th) were not sufficient to constitute ratifica-

[1] Although the consideration for the note is not directly alleged, we get the impression from the evidence that Camp purchased from Bright the 2-ton Chevrolet truck which was included in the mortgage that Camp executed. On Page 44 of the transcript the following occurred in the course of Camp's testimony when he was being interrogated as to payments on the $3,000.00 note involved:
"Q. You made some payments?
A. I made some when I first bought the truck."

tion; and that he now disaffirmed[2] the entire transaction. The said three payments came about in this manner: each was made to the Bank by A. V. Bright from money due by him to Camp, and each payment was made with Camp's implied consent. The $100.00 on December 9, 1957 was part of the proceeds of the sale of a car.[3] The payments of November 8th and December 13th were for money that Bright owed Camp for work. Camp was doing considerable hauling of some kind for Bright, and Bright, with Camp's implied consent, made the two payments on the dates mentioned.

The Chancery Court held that Camp, after reaching full age, had ratified the note and mortgage; and under all the facts and circumstances here existing, we cannot say that the Chancery Court was in error. Some of our cases, on ratification after majority of a contract made during infancy, are: *Vaughan* v. *Parr,* 20 Ark. 600; *Savage* v. *Lichlyter,* 59 Ark. 1, 26 S. W. 12; *Dunavant* v. *Fields,* 68 Ark. 534, 60 S. W. 420; *LaCotts* v. *Quertermous,* 84 Ark. 610, 107 S. W. 167; *Midland Valley Rd. Co.* v. *Johnson,* 140 Ark. 174, 215 S. W. 665, 7 A. L. R. 1007; *Bracy* v. *Miller,* 169 Ark. 1115, 278 S. W. 41, 43 A. L. R. 114; *Haydon* v. *Hillhouse,* 223 Ark. 957, 270 S. W. 2d 910. The record here does not show that the consideration of the note, which Camp executed to Bright, was for necessaries; so the transaction was subject to disaffirmance (*Midland Valley Rd. Co.* v. *Johnson, supra*). Furthermore, in *Vaughan* v. *Parr,* (*supra*), Chief Justice ENGLISH said: "The mere fact that an infant does not disaffirm a contract after he attains his

---

[2] Neither side has mentioned Act No. 337 of 1953, now found in § 68-1601 Ark. Stats., which makes certain requirements as to disaffirmance by a minor. If this Act had been invoked, it might have been shown that Camp was not entitled to disaffirmance. But in considering the case in the light of the Act, we have explored the transcript and we find that Camp testified that at the time of the trial A. V. Bright had possession of the Chevrolet truck and also the stock of automotive parts valued at $500.00. Since these items may have been the bargained items, we presume that the parties considered Bright's possession to be tantamount to the Bank's possession, because Bright was liable as an endorser on the note to the Bank. Probably this accounts for the fact that neither side made mention of Act No. 337 of 1953. See *Security Bank* v. *McEntire,* 227 Ark. 667, 300 S. W. 2d 588.

[3] Camp sold a Mercury car for Bright and Camp's commission was $100.00; and Bright, with Camp's implied consent, paid the $100.00 to the Bank on the note.

majority is not, it would seem, of itself, a confirmation, but this fact may be made significant by circumstances''.

Turning from our own cases to other jurisdictions, we find there is diversity of authority as to whether payment on a note after reaching full age is, in itself, a sufficient act to constitute ratification. In 27 Am. Jr. 806, ''Infants'' § 80, the text reads: ''A part payment of itself has been held not to amount to a ratification of a contract voidable on the ground of infancy . . . There is, however, some authority holding to the contrary, especially where the payment is accompanied by other acts, so that an intention to ratify may reasonably be implied.'' In 43 C. J. S. 111, ''Infants'' § 47, the text reads: ''The purchase may be ratified after reaching majority by acts indicating an intention to ratify, as where the late infant pays part of the purchase money . . .'' In 43 C. J. S. 167, ''Infants'' § 74, the text reads: ''An infant's ratification of his contract may be either express or implied, as long as his intention to be bound by the contract is clearly manifested. In the absence of statute, an executory contract is not ratified by mere acknowledgment of the obligation or ordinarily, by a part payment.'' In 43 C. J. S. 332, ''Infants'' § 117, in discussing the admissibility of evidence on ratification, the text reads: ''Ratification may be shown by circumstantial evidence; and evidence explanatory of what occurred after the infant reached majority has been held admissible on the issue of ratification.''[4]

From our own cases, and from all of the foregoing, we are not willing to hold that payment after reaching full age, is, in itself, sufficient to constitute ratification as a matter of law: rather, we think the better rule is, to examine each case on its own facts and determine whether payment, along with all the other facts and circumstances, constitutes ratification. We have done that in the case at bar. There is no claim of any kind that

---

[4] In addition to the general statements, there is an annotation in 59 A.L.R. 281, entitled, ''Payment by infant after majority on contract made during infancy as ratification;'' and in 5 A.L.R. 2d 7, there is an extensive annotation on the failure to disaffirm as ratification of infant's executory contract. Cases from many jurisdictions are cited and discussed in the said annotations.

Bright ever imposed on Camp when the note and mortgage were executed on January 9, 1957. Camp was working for Bright all along; and thought he was of full age, as he considered eighteen to be the lawful age. It was not until after this suit was filed and he had consulted an attorney, that he ever had any idea of disaffirmance of any part of the trade. This is the case of a man who was doing his own work, carrying on his own business, making trades in which there is no claim that he was imposed on, and who, after reaching 21, continued to make payments on the obligation, with no thought of disaffirming the transaction. Under all these facts and circumstances, we reach the conclusion that Camp, after reaching full age, ratified the particular transaction here involved.

Affirmed.