Richard LAMB, a Minor, by Mrs. Ed Hanson, his Mother and Next Friend, Plaintiff,

v.

MIDWEST MUTUAL INSURANCE COMPANY, Defendant.

No. H-68-C-14.

United States District Court W. D. Arkansas, Harrison Division.

Feb. 18, 1969.

Donald J. Adams, of Fitton, Meadows & Adams, Harrison, Ark., for plaintiff.

Ronald A. May and Gordon S. Rather, Jr., of Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## Memorandum Opinion

HENLEY, District Judge.

This is an action brought on behalf of Richard Lamb, a minor, hereinafter called plaintiff, against the defendant Midwest Mutual Insurance Company based on the uninsured motorist endorsement contained in a policy of motor vehicle insurance issued to plaintiff by the defendant in 1967.

During the policy period plaintiff, while riding his Yamaha motorcycle, described in the policy, was involved in a collision with an automobile. Thereafter he filed this suit alleging that his injuries resulting from the accident were proximately caused by negligence on the part of the driver of the automobile, and that said driver was an uninsured motorist. Plaintiff seeks to recover the principal sum of $10,000 plus statutory penalty and attorney's fee. Plaintiff is a citizen of Arkansas, and defendant is an Iowa corporation having its principal place of business in that State. In view of the amount in controversy, federal jurisdiction is established.

The cause is now before the Court on defendant's motion for summary judgment which presents the sole question of whether the plaintiff is bound by the written rejection of uninsured motorist coverage which he executed when he applied for the policy. The rejection appears in the body of the application, a copy of which is before the Court.

The position of the defendant, naturally, is that the plaintiff is bound by the rejection; plaintiff contends that he is not so bound, and bases his contention solely on his nonage. No claim is made that plaintiff did not execute the rejection, or that he did not understand it, or that the agent of the defendant who sold the policy was guilty of any fraud, misrepresentation or overreaching in connection with the rejection. It is inferable that this young man wanted minimum liability coverage with respect to the operation of his motorcycle, and that he wanted to get it as cheaply as possible. Had he purchased uninsured motorist protection, he would have been required to pay an additional premium amounting to $15.

In resisting the motion counsel for plaintiff undertakes to characterize the rejection as a separate contract which plaintiff is free to disaffirm or as being in the nature of a "release" and not binding on the plaintiff.[1] The Court agrees with counsel on both sides in their view that the question presented is a novel one, and this case seems to be one of first impression.

---

1. No copy of the policy is before the Court. However, in past cases the Court has observed that the "uninsured motorist endorsement" ordinarily appears in the body of automobile insurance policies, and such is probably the case here.

Ark.Stats., Ann., § 66–4003 provides in substance that all motor vehicle liability insurance policies issued in this State must afford uninsured motorist protection with minimum limits of $10,000 and $20,000. The statute goes on to provide, however, "that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage." It will be observed that the statute does not require the rejection to appear in the policy or even that it be in writing.

As noted, motor vehicle insurance policies ordinarily contain the uninsured motorist endorsement, and where the policy itself is before the Court regard must be had to the declarations contained therein to determine whether the coverage has actually been provided and whether an additional premium therefor has been paid. As indicated, no claim is made here that plaintiff did otherwise than reject the coverage or that he paid any additional premium for the protection which he now claims.

The Court cannot accept either of the plaintiff's characterizations of the plaintiff's rejection and agrees with the defendant that plaintiff has no claim against the defendant.

 There is no question that in Arkansas, as elsewhere, a minor has a right to disaffirm a contract for non-necessaries at any time during his minority and for a reasonable time thereafter. Camp v. Bank of Bentonville, 230 Ark. 414, 323 S.W.2d 556; Haydon v. Hillhouse, 223 Ark. 957, 270 S.W.2d 910; Davie v. Padgett, 117 Ark. 544, 176 S.W. 333; Bozeman v. Browning, 31 Ark. 364; Gullett v. Lamberton, 6 Ark. 109. It is safe to assume that in Arkansas that general rule is applicable to an insurance contract entered into by a minor, including a policy of automobile or motorcycle insurance. And since motor vehicles are not generally considered in Arkansas to be "necessities" for minors, Camp v. Bank of Bentonville, supra; Haydon v. Hillhouse, supra; Crockett Motor Co. v. Thompson, 177 Ark. 495, 6 S.W.2d 834,

it is also safe to assume that a minor has a right to disaffirm a policy of motor vehicle insurance purchased by him.

 It is clear, however, that in the case of such a contract, as in the case of contracts generally, the minor must either affirm or disaffirm the contract as a whole; he cannot accept the benefits and disaffirm the burdens. 43 C.J.S. Infants § 73, p. 165. And a minor is not entitled by reason of his minority to change a contract unilaterally so as to impose upon the other party obligations which he did not assume. It has been well stated that infancy acts "as a shield and not as a sword." Ibid, § 75, p. 170 and cases there cited.

 The Court sees nothing in the statute which requires a minor to purchase uninsured motorist insurance if he does not want it, and certainly the Court sees nothing in the statute which requires an insurance company to provide uninsured motorist coverage gratis to a minor who has rejected the coverage and has paid nothing for such protection.

When plaintiff applied to the defendant for liability insurance, the defendant was required under the statute to offer uninsured motorist coverage as well, and it did so. The plaintiff had an option either to reject the coverage or to accept it and pay for it. It was necessary, of course, for him to manifest his choice, and he did so by executing the rejection appearing in the application.

In terms of contract law what plaintiff did when he executed the rejection was to decline an offer which the defendant was required to make but which plaintiff was not required to accept. Thus, as far as uninsured motorist insurance was concerned, there was simply never any contract to be either affirmed or disaffirmed by the minor. He cannot be permitted to change his mind ex post facto and thereby obtain the benefit of coverage which he did not purchase in the first place.

The motion for summary judgment will be sustained, and the complaint will be dismissed.