Superior Iron Works *v.* McMillan.

5-2674                                   357 S. W. 2d 524

Opinion delivered May 28, 1962.

*Keith, Clegg & Eckert,* for appellant.

*William C. Gilliam,* for appellee.

Jim Johnson, Associate Justice. This appeal involves a replevin action brought by appellant, Superior Iron Works and Supply Company, Inc., against appellee, F. H. McMillan, d/b/a McMillan Pipe and Supply Company, seeking to recover a quantity of drill pipe and damages.

The appellant is in the business of manufacturing and selling oil field equipment with offices located in several states, including a district office at Magnolia, Arkansas. Superior owned approximately 2,820 feet of used 3½ inch drill pipe which it had temporarily stored on a vacant lease, known as the "Hall Lease" near Stephens, Arkansas. In February of 1960, Superior sent two of its trucks from Shreveport to pick up the pipe

and it was discovered that the pipe had disappeared. Superior immediately reported the theft of the pipe to the Sheriff of Columbia County, who obtained the assistance of the Arkansas State Police and the Federal Bureau of Investigation.

The Sheriff obtained information that a man named A. L. Cook had pretended that he was the owner of the pipe and had sold it to Hugh Ray White; a warrant was issued for the arrest of Cook, but he has not been apprehended. A bill of sale was executed by Cook to White describing 2,820 feet of drill pipe and containing the following recital:

"This property being sold is located on the Hall Lease in the Stephens, Arkansas, field, and is located on racks, which are also hereby sold to H. R. White."

At the time of this transaction, White gave a personal check to Cook with the intention of selling the pipe and depositing the proceeds to cover the check. White attempted to sell the pipe to a number of people and F. H. McMillan, the appellee, being advised about the pipe called White indicating his interest in buying it.

McMillan negotiated with both Cook and White and bought the pipe by making payment of one check to Cook in the amount of $1,424.00 and a separate check to White for $409.00. In this trade, White agreed to deliver the pipe to McMillan's yard at Malvern and for this purpose, White hired R. A. Flower Trucking Company, a common carrier, which picked up the pipe at the Hall lease near Stephens, Arkansas, and delivered it to the yard of the appellee, F. H. McMillan, at Malvern.

The total consideration paid for the pipe by McMillan was $1,833.00. The pipe, according to the testimony of Superior Iron Works officials, is valued at $1.50 a foot, or $4,230.00.

Immediately after learning that the stolen pipe was in the hands of McMillan, Superior Iron Works sent a telegram to McMillan advising him of these facts as follows:

"This is to inform you that the 2,820 ft. of 3½ inch drill pipe which was delivered to you by Mr. Hugh Ray White was stolen from Superior Iron Works in Stephens, Arkansas."

Demands were made upon Mr. McMillan for return of the pipe, but he refused to release it to Superior Iron Works. Thereupon this replevin action was commenced against McMillan who in turn posted a cross-bond for the purpose of retaining the property.

The pipe racks referred to in the bill of sale were not purchased from White by McMillan and these racks were recovered by Superior Iron Works from White at his residence at Magnolia, Arkansas.

At the close of the case by both parties, appellant moved for a directed verdict, which was denied, and the case was submitted to the jury upon interrogatories, only the first of which was answered. This interrogatory is as follows:

"Do you find from a preponderance of the evidence that the pipe now in possession of the defendant, McMillan Supply Company, was stolen from the plaintiff, Superior Iron Works?"

The jury responded, "No".

Judgment was entered on the verdict. Appellant moved for judgment notwithstanding the verdict, and for a new trial. The trial court denied the motion, and this appeal followed.

For reversal appellant contends that "the evidence is not sufficient in law to sustain the verdict. The trial court erred in refusing to grant a directed verdict at the close of testimony and in refusing to grant a judgment to the plaintiff non obstante veredicto."

Ark. Stats. § 43-2901 provides:

"All property obtained by larceny, robbery or burglary, shall be restored to the owner, and no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property."

Ark. Stats. § 42-2902 provides:

"Any person losing property or any valuable thing by larceny, robbery or burglary may maintain his action not only against such felon, but against any persons whatsoever, in whose hands or possession the same may be found."

From these statutes it is clear that in this jurisdiction title to stolen property remains in its rightful owner. *Eureka Springs Sales Company* v. *Ward,* 226 Ark. 424, 290 S. W. 2d 434.

The definition of larceny is stated succinctly in 52 C. J. S., page 779 as follows:

"Larceny was a crime at common law; and at common law it may be defined to be the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner."

The undisputed evidence in the case at bar showed that the pipe in question was owned by the appellant, was carried away by another without the consent of the appellant and with the intent (by the purported sale to the appellee) to deprive the owner of his property permanently.

The only witness for the appellee was the appellee himself, and he did not purport to testify in any respect as to how the pipe was lawfully acquired by anyone from the appellant.

On the other hand, all of the uncontradicted testimony showed beyond question that the pipe was stolen. This uncontradicted evidence was:

(a) The ownership of Superior was established conclusively by the testimony of appellant's vice president and the introduction of its title papers. There is no evidence whatever in the record to the contrary.

(b)   The location of the pipe on the "Hall Lease" was established by the uncontradicted testimony of appellant's store manager at Magnolia, the testimony of White, who sold the pipe to appellee, and by the statement in the Bill of Sale, introduced by appellee, and under which he claims title, recites that the pipe described therein was "located on the Hall Lease". Appellee did not contradict this evidence in his testimony or otherwise.

(c)   The fact that the pipe was taken from the Hall Lease without the knowledge and consent of Superior and sold by Cook to White and by White to appellee without right was also established by all the evidence. Neither did appellee in any way contradict any of this evidence.

Under this state of the record we have no choice but to conclude that there is no substantial evidence to sustain the jury's verdict. *Aetna Life Ins. Co.* v. *Lemay,* 218 Ark. 32S, 236 S. W. 2d 85; *Mutual Life Ins. Co. of New York* v. *Springer,* 193 Ark. 990, 104 S. W. 2d 195.

It follows, therefore, that only the question of the value of the pipe and damages, if any, should have been submitted to the jury. *Kesterson* v. *Hays,* 137 Ark. 592, 209 S. W. 721. Accordingly, the judgment is reversed and the cause is remanded for a new trial on those issues only. *Union Central Life Ins. Co.* v. *Mendenhall,* 183 Ark. 25, 34 S. W. 2d 1078.