BROWN PROPERTIES, INC. and Dale McGINNIS
*v.* Danny O. & Cheryl LOOPER, Monty L. and Karen
Sue HOLMES, and Arvel & Maudine HOLMES

87-46                               732 S.W.2d 471

Supreme Court of Arkansas
Opinion delivered July 20, 1987

*Stanley D. Rauls*, and *Judieth P. Balentine*, for appellant.

*Howell, Price, Trice, Basham & Hope, P.A.*, by: *Ronald A. Hope*, for appellees, Holmes.

*Hoofman and Bingham, P.A.,* by: *Cliff Hoofman,* for appellees, Looper.

ROBERT H. DUDLEY, Justice. The question presented is whether the chancellor erred in finding that the parties intended for an easement for ingress and egress to permit the holder to pave the roadway and to install utilities underneath the surface of the land. We hold that the chancellor was correct in finding that they intended for the roadway to be paved, but that he erred in finding that underground utilities construction was contemplated by the parties to the purchase agreement.

The appellants, Brown Properties, Inc. and Dale McGinnis, bought a five acre tract of land in Pulaski County from appellees, Danny and Cheryl Looper. The purchase agreement contained a provision reserving an easement for the seller which stated:

> Buyer and Seller agree that an easement for ingress and egress is reserved across a forty foot strip lying West of and adjacent to the East line of subject property and running from a point on the South right of way line of Forrest Oak Road north to the north property line of subject property.

Six months later the Loopers sold a different five acre tract to appellee Monty Holmes. The tract was just north of and adjacent to the appellants' property. In order to provide appellee Holmes with access to his land, the Loopers also conveyed the easement they had reserved from the sale to appellants.

For almost a year the properties remained unimproved and dealings between the new neighbors were amicable. Testimony indicates that the parties at one point even contemplated jointly borrowing $30,000 in order to build a common roadway between the parties. However, as the plans to develop the properties conflicted and collateral disputes arose, relations deteriorated. When Holmes began to lay utilities under the easement and to pave its surface, appellants filed a petition to quiet title and a complaint seeking a judgment declaring the easement to be for ingress and egress only.

The parties agreed at a pretrial conference, "that the intent in granting the easement was going to be a controlling factor in this lawsuit." After hearing the evidence at trial, the chancellor ruled that appellee Looper and appellants had intended for the

easement to accommodate both pavement and underground utilities. On appeal, appellants argue that the chancellor erred first in admitting testimony bearing on the intent of the parties because the language creating the easement was sufficiently clear to show its extent and, second, in holding that an easement for ingress and egress permits construction of a paved road or underground utilities.

It is a well-settled principle of law that where an instrument is unambiguous on its face, extrinsic evidence is inadmissible to contradict or vary its terms. *Lane* v. *Pfeifer*, 264 Ark. 162, 568 S.W.2d 212 (1978). Thus, had the issue been preserved we may well have found that testimony bearing on the parties' intent was inadmissible to vary the terms of this easement, which we consider to be clear and unambiguous. However, appellants failed to make timely objection to the testimony and they agreed to limit the issues to a determination of the parties' intent. *Hughes* v. *Lee*, 238 Ark. 547, 383 S.W.2d 97 (1964) and *Walt Bennett Ford, Inc.* v. *Brown*, 283 Ark. 1, 670 S.W.2d 441 (1984). Having agreed that intent would control the suit, appellants may not now raise this issue on appeal. *C & L Trucking, Inc.* v. *Allen*, 285 Ark. 243, 686 S.W.2d 399 (1985).

While the chancellor correctly found that the parties intended for the road surface to be paved, he erred in ruling that they contemplated underground utility construction as well, and we therefore set aside his finding on that point. ARCP Rule 52(a). The only evidence which the chancellor used to support his finding that the parties intended the easement to include the right to construct utilities was that it was "inconceivable that the grantor intended to bring the utilities from thousands of feet away instead of hooking onto the utilities from the adjacent subdivision approximately 195 feet away, or that the grantee intended to receive only the right to drive across the easement, but not to bring utilities across the same property." That finding omits the intent of the grantee who owns the land which the easement crosses.

The grant of an easement for ingress and egress does not expressly or by implication include the right to lay utilities below the surface of the easement. *Ampagoomian* v. *Atamian*, 81 N.E.2d 843 (Mass. 1948). However, since the parties stipulated

"that the intent in granting the easement was going to be a controlling factor in this lawsuit," and since the chancellor relied on that stipulation, we examine the intent of the parties. Appellee Looper, the seller, testified that in reserving the easement, he intended for it to include utilities. Appellant McGinnis, the purchaser, steadfastly denied intending for the easement to include utilities, and asserted that by using the words "for ingress and egress," she intended to restrict the use of the easement. Clearly, there was no mutual intent for the easement to include anything below the surface. Accordingly, we reverse the chancellor's finding of fact that the parties intended that the easement for ingress and egress included the right to lay underground utilities.

Affirmed in part; reversed in part and remanded.

HAYS, J., dissenting in part, would affirm pursuant to ARCP Rule 52.